# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 99-730 |
| ANDREW BROWN : | |

**MEMORANDUM**

YOHN, J.                                                                                                                                                                                     July 16, 2013

Defendant, Andrew Brown, seeks relief from two orders that I issued denying his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. He asks that I set aside the orders pursuant to my power to "entertain an independent action to relieve a party" from an order, Fed. R. Civ. P. 60(d)(1), or "set aside a judgment for fraud on the court," *id.* 60(d)(3).[1] For the reasons set forth below, I will dismiss Brown's filing because, in actuality, it is an unauthorized successive § 2255 motion.

## I.     Factual and Procedural Background[2]

The facts underlying Brown's conviction are set out in detail in an earlier opinion. *See United States v. Brown*, No. 99-370, 2006 WL 3000960 (E.D. Pa. Oct. 18, 2006). I briefly

---

[1] Even though motions under § 2255 are docketed in the underlying criminal matter, *see United States v. Fiorelli*, 337 F.3d 282, 285-86 (3rd Cir. 2003), the Federal Rules of Civil Procedure apply. *See* Rules Governing Section 2255 Proceedings, Rule 12 ("The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

[2] The background of this case is extensive, as it is over a decade old. For the sake of brevity, I refer to the documents from which background information has been taken solely by their ECF number on the criminal docket for *United States v. Andrew Brown*, 99-cr-730 (E.D. Pa.), unless there is an available Westlaw cite.

recount the relevant facts here. On September 28, 1999, police officers Olney Johnson and Fredrick Boyle of the Philadelphia Housing Authority ("PHA") observed Brown standing in a PHA housing project holding a large handgun. When they exited their vehicle to investigate, Brown ran to a parked car and drove away. The officers pursued Brown for several blocks; the pursuit ended when Brown crashed into a telephone pole. Brown then left his car, dropped the handgun, and began running away. Eventually, the officers apprehended Brown and recovered the weapon. At trial, the government called two witnesses, Officer Johnson and Philadelphia Police Detective Timothy Brooks, who investigated Brown's case after his arrest. Defense counsel called no witnesses, but attempted to impeach Brooks and Johnson and show that Brown never possessed the firearm. On June 1, 2000, a jury found Brown guilty under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Brown filed post-trial motions seeking arrest of judgment and a new trial based on newly discovered evidence, ineffectiveness of trial counsel, and deficiencies in the indictment. (*See* ECF 56.) He claimed that trial counsel was ineffective for failing to interview and call two witnesses, Aaron Devine and Latifah Holloway. Devine and Holloway's statements also formed the basis of Brown's new evidence claim. He claimed that trial counsel was ineffective for failing to file certain pretrial motions, including certain discovery and suppression motions. He also claimed that counsel was ineffective for advising him to stipulate that the gun at issue was manufactured outside of Pennsylvania, and for failing to challenge the court's jurisdiction under § 922(g). Finally, Brown argued that the indictment was deficient because it did not contain or give adequate notice of the essential elements of the charged offense.

I denied the post-trial motions on March 12, 2001, without prejudice to defendant's right

to raise his ineffectiveness claims in a proceeding under § 2255. (ECF 66.) On May 7, 2001, I entered a final judgment of conviction and sentenced Brown to a prison term of 270 months. (ECF 73.)

Brown appealed his conviction and sentence, raising three arguments: (1) the interstate commerce element of § 922(g) was not met because there was no evidence that "the gun had a current effect on commerce"; (2) the sentence was excessive in that it exceeded the prescribed statutory maximum; (3) he was denied a fair trial. The Third Circuit rejected his arguments. First, "the transport of the weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession a sufficient nexus to interstate commerce to fall within the ambit of the statute." *United States v. Brown*, 54 F. App'x 342, 343 (3d Cir. 2002). Since Brown stipulated that the firearm was manufactured outside of Pennsylvania, this element of § 922(g) was satisfied. Second, the applicable statutory maximum was dictated by 18 U.S.C. § 924(e), the so-called "Armed Career Criminal Act," based on Brown's prior criminal record. Section 924(e) authorizes a term of life imprisonment, so a sentence of 270 months was appropriate.[3] Brown's fair trial argument rested on two subclaims: testimony about his multiple aliases tainted the jury, and the prosecutor delivered an improper summation. The panel found that the testimony and the closing arguments were proper, and thus neither infringed on Brown's right to a fair trial. *Id.* at 345. The Third Circuit refused to rehear the case *en banc* on June 25, 2003. *See* General Docket, *United States v. Brown*, 01-2150 (3d Cir.). Brown's petition to the Supreme Court for a writ of

---

[3] Brown also raised an a related challenge under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This challenge was rejected, because "[t]he Court, in *Apprendi*, specifically excluded the fact of a prior conviction from those elements which must be submitted to a jury." 54 F. App'x at 344.

3

certiorari was denied on April 19, 2004. (*Id.*)

Having worked his way through the post-trial and direct appeals process, Brown filed a § 2255 motion on August 31, 2004.[4] My decision on the motion is set out at *United States v. Brown*, No. 99-730, 2005 WL 1532538 (E.D. Pa. June 28, 2005), but I will summarize it here. Brown first argued that his arrest by PHA officers outside the PHA's territorial limits was illegal and thus the firearm should not have been admitted into evidence under the Fourth Amendment. Furthermore, trial and appellate counsel were ineffective for not raising this argument. I denied the Fourth Amendment claim as procedurally defaulted. The claim was also meritless, so I found trial and appellate counsel were not ineffective for failing to raise it.

Brown raised a speedy trial claim under the Speedy Trial Act, the Fifth Amendment, and the Sixth Amendment. I found these claims to be procedurally defaulted. He claimed that trial and appellate counsel were ineffective for not raising these arguments. Again, because the claims were also substantively meritless, neither counsel was ineffective.

Brown argued that his indictment was deficient because it was not signed by the grand jury foreperson. This claim was procedurally defaulted, and in any case, factually wrong. I also rejected Brown's argument that appellate counsel was deficient for failing to raise this claim.

Finally, Brown raised a bevy of other trial counsel and appellate counsel ineffectiveness claims, most of which I rejected. He argued that trial counsel was ineffective for failing to

---

[4] Brown's judgment of conviction became final when the Supreme Court denied his petition for writ of certiorari. This triggered the one-year limitations period for Brown's § 2255 motion. *See* 28 U.S.C. § 2255(f)(1).

interview and/or call three eyewitnesses: Devine, Holloway, and Andre Williams.[5] I found that the proposed testimony of Devine would have made no difference in Brown's trial and that counsel had no reason to know about Holloway. However, trial counsel had taken Williams's statement, and his account undermined Johnson's testimony that he saw Brown standing on the street with a handgun. The ineffectiveness claim based on Williams was not obviously futile, so I ordered an evidentiary hearing on this claim alone.

Brown further argued that trial counsel was deficient for failing to call Officer Boyle as a witness; failing to call Brown's ex-fiancee to testify to alleged police coercion; stipulating to the interstate commerce requirement of § 922(g)(1); failing to object to evidence of Brown's prior bad acts; failing to personally examine Officer Johnson's disciplinary files; filing for continuances that "waived" Brown's speedy trial rights; failing to object to the absence of African-American males on the jury venire; failing to visit Brown in jail; failing to object to Johnson's testimony that suggested Brown was involved in additional criminal activity; failing to object to Brooks's reference to Brown's use of an alias upon arrest; failing to object to Brooks's testimony about Brown's post-arrest statements based on *Miranda*; failing to object when Brooks improperly vouched for Boyle; failing to object to improper expert testimony by Brooks; representing defendant while influenced by an "actual conflict of interest"; failing to act as an advocate; cajoling defendant not to testify; and failing to object to the prosecution's improper summation. Brown also contended that appellate counsel was ineffective because he failed to develop an adequate record on appeal, apparently in an effort to protect trial counsel's reputation.

---

[5]Brown had mentioned Williams in his motion for a new trial. (*See* ECF 56.) However, in that motion, he failed to describe what testimony could be expected from Williams.

I rejected these claims as either factually contradicted by the record, mistaken on the law, or indicative of counsel's sound trial strategy.

Brown's § 2255 motion also heavily focused on radio transmissions between PHA officers and PHA radio dispatch during his pursuit. Brown asserted that trial counsel was ineffective because he failed to request a recording of the transmissions; he failed to make a *Brady* claim in connection with the recording; and he failed to object to the authenticity of the recording played at trial. However, counsel had obtained a copy of the recording: he introduced it into evidence in support of defendant's case. Therefore, there was no reason to challenge its authenticity. Brown's *Brady* argument was predicated on a discrepancy between the recording and police radio logs. The radio logs showed that the officers sent their first transmission at 9:39 p.m., yet the first tape entry was made at 9:42 p.m. But there was no indication that a recording of this three-minute gap ever existed. The government could not commit a *Brady* violation by suppressing evidence it did not possess.[6]

Thus, I granted Brown an evidentiary hearing on his claim that trial counsel was ineffective for failing to call Williams as a witness, and I denied the rest of his motion, in an order dated June 28, 2005.

After my order, Brown supplemented his § 2255 motion. (ECF 119.) This supplement dealt with the *transcript* of the PHA dispatch tape—long a bone of contention for Brown. On April 2, 2004, he filed for a "complete and entire transcript of audio dispatch tape used at his

---

[6] Brown had also referenced this three-minute gap in his post-trial motions. He argued that trial counsel was ineffective because he did not request a continuance in order to secure a recording of this three-minute segment. The government argued that a continuance would be futile because this segment of tape was not available. (*See* ECF 56.)

trial, in order to perfect his 2255 motion." (ECF 88.) I ordered that the government send the transcript to Brown or else advise the court if it was unable to do so. (ECF 89.) On June 15, 2005, the government responded by letter to the court and to Brown, enclosing a two-page transcript that it represented was the transcript of the tape. This transcript had been provided to trial counsel; it was limited to transmissions from Boyle and Johnson. (*See* ECF 165, at 16.) On June 16, 2005, Brown requested "a complete copy of PHA police's dispatch tape used at trial" in order to verify that the tape and the transcript matched. (ECF 114.) On June 28, 2005, I ordered the government to provide Brown with a copy of the dispatch tape, provided it was still available. (ECF 117.)

Armed with the two-page transcript, Brown argued in his supplement that trial counsel was ineffective for agreeing to a stipulation—read to the jury—that described the PHA radio transmissions and explained that three minutes of the transmissions were missing. The first transcribed transmission was sent at 9:42 p.m. Brown argued that the content of the transmission, as revealed by the transcript, indicated that the transmission at 9:42 p.m. was the initial transmission having to do with his pursuit. Therefore, counsel was mistaken when he stipulated that there were unrecorded transmissions pertaining to Brown between 9:39 p.m. and 9:42 p.m. (ECF 119.)

The government responded to the supplement on July 27, 2005. (ECF 122.) In an effort to rebut Brown's argument about the erroneous stipulation, the government attached two exhibits to its response: the PHA radio dispatch log and a transcript of the recording provided by PHA. This transcript, however, differed from the excerpted two-page transcript provided to Brown—it was longer, totaling nineteen pages, and included transmissions from sources other than Johnson and

Boyle (hereinafter, the "full RDT"). This full RDT would become the basis of numerous filings by Brown (including the instant motion, as discussed below).

I appointed Brown a series of attorneys for his evidentiary hearing, and the task eventually fell to George H. Newman, Esquire. The evidentiary hearing was held on November 15, 2005, and January 10, 2006. On October 18, 2006, I denied the remaining ineffectiveness claims. I found that trial counsel, "having reservations about the credibility Williams's account and fearing the government's impeachment of Williams, decided against calling Williams as a witness . . . ." 2006 WL 3000960, at *6. I rejected the supplemental claim: "Brown cannot meet the burden of overcoming the presumption that trial counsel's stipulation might be considered sound trial strategy falling within the wide range of reasonable professional assistance." *Id.* at *9. I further determined that there was no basis for issuing a certificate of appealability ("COA").

On October 25, 2006, Brown (through his counsel, Newman) filed his appeal of my October 18, 2006 decision finally denying his § 2255 motion. On December 6, 2006, he moved the Third Circuit for a certificate of appealability ("COA") as required under 28 U.S.C. § 2253(c). The Third Circuit denied Brown a COA with regard to this § 2255 motion on June 7, 2007. Order, *United States v. Andrew Brown*, No. 06-4983 (3d Cir.). He petitioned for rehearing en banc, which was denied on September 12, 2007. *See* General Docket, *United States v. Brown*, 06-4983 (3d Cir.).

On November 3, 2006, before the denial of a COA, Brown filed a motion to alter or amend judgement in this court. (ECF 151.) I denied this motion on the grounds that Brown had already filed his appeal from the October 18, 2006 decision and, in any event, it did not raise any issues that were not previously considered. (ECF 152.) Brown did not appeal this denial.

On November 13, 2006, Brown filed a second motion under § 2255. (ECF 153.) He argued that trial counsel was ineffective for not obtaining the full RDT. Because Brown needed authorization to file a second or successive § 2255 motion, *see* 28 U.S.C. § 2255(h), I referred this motion for consideration by the Third Circuit.[7] (ECF 155.)

On December 10, 2007, Brown filed a pro se motion for relief from the order of October 18, 2006, pursuant Federal Rule of Civil Procedure 60(b)(6) or, alternatively, as an independent action in equity. *United States v. Brown*, No. 99-730, 2008 WL 1376307 (E.D. Pa. April 8, 2008). Brown argued that I denied him a COA without giving him notice or an opportunity to be heard. He raised more ineffectiveness claims, this time against Newman: counsel was ineffective for failing to object to the denial of a COA; prematurely filing a notice of appeal; and for seeking a COA before the Third Circuit.

I denied Brown's motion for reconsideration on April 8, 2008. "[T]his court did not act on its own initiative [to deny him a COA], as Brown claims, but in response to the government's request and pursuant to local and federal rules of procedure." *Id.* at *2. Furthermore, I rejected the ineffectiveness claims, because they only targeted actions that Newman took *after* I denied Brown's § 2255 motion: "Because Brown has neither a constitutional nor a statutory right to counsel at these stages of the proceeding, and because Brown has not shown that he was prejudiced by counsel's allegedly improper actions, his ineffective assistance of counsel claim

---

[7] This second § 2255 motion was filed while Brown's appeal to the Third Circuit (in which he challenged my October 18, 2006 order) was still pending. The Third Circuit, on June 7, 2007, denied Brown a COA in connection with this appeal. However, it is not clear whether that order also applies to the request to file a second or successive motion. However, since the order was issued after I referred the motion, I presume the order disposed of both Brown's appeal and his second § 2255 motion.

9

must fail." *Id.* at *3. Brown never appealed this decision.

On February 15, 2012, Brown filed a petition seeking relief under 28 U.S.C. § 2241 in the United States District Court for the Northern District of New York. He argued that he was innocent of the charged crime, and that Officer Johnson had provided perjured testimony. He further asserted that the full RDT proved the perjury and his factual innocence. He raised *Brady* and prosecutorial misconduct claims, stating that the full RDT was exculpatory evidence suppressed by the government. Finally, he asserted that his trial counsel was ineffective for failing to obtain and use the full RDT; for stipulating that three minutes of transmissions were missing; and for failing to argue that the transmission at 9:39 p.m. had nothing to do with petitioner. *See* Appl. for Leave to File Second or Successive Pet. pursuant to 28 U.S.C. Section 2244(b), *In re: Andrew Brown*, 12-1507 (3d Cir. Feb. 29, 2012).

The judge correctly determined that Brown's so-called § 2241 petition was actually an unauthorized second or successive § 2255 motion. He ordered that the action be transferred to the Third Circuit such that Brown could seek permission to file a successive § 2255 motion. *Id*. On April 12, 2012, a panel of the Third Circuit denied Brown's application to file a successive § 2255 motion. Order, *In re: Andrew Brown*, 12-1507 (3d Cir. Apr. 12, 2012).

Undaunted by failure, Brown has returned. Brown now asks me to undo my orders of June 28, 2005, and October 18, 2006. (ECF 165, "Independent Action under Rule 60(d)(1) of Federal Rules of Civil Procedure Savings Clause Seeking to Set Aside the Memos and Orders of June 28, 2005 and October 18, 2006 Due to the Discovery of Facts Amounting to a Grave Miscarriage of Justice And/or Unjust Judgement" [hereinafter Rule 60(d) Mot.].) His motion was filed on January 28, 2013. The government filed a response on April 8, 2013.

His arguments in the instant motion again focus on the full RDT. As stated above, the government provided the full RDT on July 27, 2005, as an exhibit attached to its response to Brown's § 2255 supplement. I note that this is almost four months prior to the first evidentiary hearing on Brown's § 2255 motion (November 15, 2005) and over a year before I denied the outstanding claims in this motion (October 18, 2006). In the instant motion, Brown states that he personally received a copy of the transcript from Newman on January 10, 2006—the date of his second evidentiary hearing.[8] (*See* Rule 60(d) Mot. at 3.)

Brown's current motion asserts four grounds for relief. First, he argues that this court should set aside its order because his trial counsel was ineffective. He bases this contention on trial counsel's failure to obtain the full RDT. Instead, trial counsel only received the two-page excerpted version. This same argument was raised and rejected in Brown's second and third § 2255 motions. Brown adds that it is not enough that trial counsel was in possession of a recording of the radio transmissions: either the recording was inaudible or different from the recording that the government possessed. (*Id.* at 10, 11, 15-19.)

Second, he argues that this court should set aside its order because the prosecution violated *Brady* at trial by suppressing the full RDT. He claims that the RDT impeaches Johnson's testimony that he witnessed Boyle recover the handgun. He also claims the RDT exculpates him because it indicates the initial reason for his pursuit was "reckless driving." Relatedly, he states that prosecutors in his case knew (or should have known) that Johnson's testimony was perjured, and that it was fundamentally unfair for the prosecution to rely on this perjured testimony at trial.

---

[8] Brown has previously averred that he discovered, and received a copy of, the full RDT on November 15, 2005, which was the date of his first evidentiary hearing. (ECF 153).

(*Id.* at 4-12.)

Third, Brown avers that the government made "a calculated move" to withhold the full RDT until after the statute of limitations on his § 2255 motion elapsed, in order "to prevent him from obtaining a full, fair and meaningful opportunity to be heard on his 2255 motion." (*Id.* at 6, 12.) He claims that this conduct constitutes "fraud on the court." *See* Fed. R. Civ. P. 60(d)(3).

Fourth, Brown argues that relief is warranted because his § 2255 counsel did not perform adequately. Brown notes that at the January 10, 2006 evidentiary hearing, Newman represented to the court that he would be filing a supplement to Brown's § 2255 motion based on the RDT.[9] (Rule 60(d) Mot. at 3.) According to Brown, he never did so, "in effect, abandoning petitioner." (*Id.*)

## II. Discussion

### A. Legal Background

Brown invokes subsections (d)(1) and (d)(3) of Rule 60. Rule 60(d) is not an affirmative grant of power; it merely provides that the grounds set forth elsewhere in Rule 60 for reconsideration of judgments or orders do not limit a court's power to "entertain an independent action to relieve a party from a judgment, order, or proceeding," Fed. R. Civ. P. 60(d)(1), or "set aside a judgment for fraud on the court," *id.* 60(d)(3). *See United States v. Burke*, No. 92-268-1, 2008 WL 901683, at *4 (E.D. Pa. Apr. 2, 2008). Despite the reference to "independent action" in

---

[9] At the hearing, the government objected to Newman's attempt to ask questions based on the full RDT, stating that "the only open issues at this point were whether it was appropriate to call Andre Williams and whether the stipulation to the gap in the tape was appropriate." (Evid. Hr'g Tr., Jan. 10, 2006, at 40.) Newman responded that he would "move to add one more claim to the petition," referring to a claim based the full RDT. (*Id.*) I pointed out that the statute of limitations had run on the § 2255 motion and that an amendment would be untimely unless it related back to the original motion. (*Id.* at 41, 47-48.)

12

Rule 60(d)(1), courts are not overly particular about the procedure through which a litigant raises his arguments. *See, e.g.*, *Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 86 F.R.D. 131, 135-140 (E.D. Va. 1980) (clarifying interplay between the various provisions of Rule 60 and construing motion as the institution of a separate action).

There are two factors that guide my analysis here. First, case law emphasizes that a habeas petitioner cannot circumvent the strictures of 28 U.S.C. § 2244, which governs the filing of second or successive habeas petitions, by simply labeling his paper a motion under Rule 60. In *Gonzalez v. Crosby*, 545 U.S. 524 (2005), the Supreme Court elucidated the distinction between true Rule 60 motions and disguised habeas petitions. A motion is properly brought under Rule 60 where the "motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."[10] *See also Pridgen v. Shannon*, 380 F.3d 721, 727 (3d Cir. 2004) ("[I]n those instances in which the factual predicate of a petitioner's Rule 60(b) motion attacks the manner in which the earlier habeas judgment was procured and not the underlying conviction, the Rule 60(b) motion may be adjudicated on the merits."). If a court finds that a motion under Rule 60 is actually an unauthorized successive

---

[10] While *Gonzalez* dealt with petitions under 28 U.S.C. § 2254, courts have applied its analysis to the § 2255 context. *See, e.g.*, *United States v. Andrews*, 463 F. App'x 169, 171-72 (3d Cir. 2012). I see no reason to treat the provisions differently in this case.

Furthermore, I assume that the analysis for whether a 60(d) motion can proceed outside the strictures of § 2244 is the same as the analysis for whether a 60(b) motion is not a second or successive § 2255 motion. *See, e.g.*, *United States v. Sharpe*, No. 02-771, 2010 WL 2572636, at *2 (E.D. Pa. June 22, 2010) ("For purposes of applying the 'second or successive petition' rule, there is no difference between Rule 60(b) and 60(d)."). This serves the purpose of keeping § 2244's gatekeeping provisions in place no matter what the motion is titled. Moreover, at the time *Gonzalez* was written, the language of now-Rule 60(d) was actually encompassed within Rule 60(b). *See United States v. Swint*, No. 94-276, 2008 WL 314184, at *3 n.3 (E.D. Pa. Feb. 5, 2008).

petition, it must dismiss for lack of jurisdiction. *See id.* at 724 (citing 28 U.S.C. § 2244(b)).

Second, as noted above, Rule 60(d) does not confer any extra power upon a court. The court's ability to entertain an independent action or vacate a judgement due to fraud must come from some other source. While an "inherent power" in equity to set aside civil judgments has long been recognized, *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), the propriety of such an act in the criminal context is questionable. *See United States v. Washington*, 549 F.3d 905, 914 (3d Cir. 2008) (concluding that, in "the absence of authority suggesting a longstanding inherent power of a district court to vacate a criminal sentence based on fraud," a district court does not have the power to "vacate a judgment procured by fraud in the *criminal* context" (emphasis in original) (citing *Carlisle v. United States*, 517 U.S. 416, 426 (1996))). Section 2255 proceedings are treated as part of the original criminal action. *See* Rules Governing Section 2255 Proceedings, Rule 1 advisory committee's note ("[A] motion under § 2255 is a further step in the movant's *criminal* case and *not* a separate civil action." (emphases added)); *United States v. Fiorelli*, 337 F.3d 282, 285-86 (3d Cir. 2003) (recognizing that the Rules "altered th[e] tradition" of treating § 2255 proceedings as separate civil suits).

Therefore, I must answer a series of questions. First, is Brown's Rule 60 motion actually a successive § 2255 motion in disguise? Second, does this court have the power to grant the relief that Brown seeks? And third, if I do have such power, should I exercise it—that is, are Brown's Rule 60(d) claims substantively meritorious? Because the answer to the first question is yes, I need not reach the latter two.

**B.      Application**

As stated above, I construe Brown's motion as asserting four grounds for relief: (1) trial

petition, it must dismiss for lack of jurisdiction. *See id.* at 724 (citing 28 U.S.C. § 2244(b)).

Second, as noted above, Rule 60(d) does not confer any extra power upon a court. The court's ability to entertain an independent action or vacate a judgement due to fraud must come from some other source. While an "inherent power" in equity to set aside civil judgments has long been recognized, *see Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), the propriety of such an act in the criminal context is questionable. *See United States v. Washington*, 549 F.3d 905, 914 (3d Cir. 2008) (concluding that, in "the absence of authority suggesting a longstanding inherent power of a district court to vacate a criminal sentence based on fraud," a district court does not have the power to "vacate a judgment procured by fraud in the *criminal* context" (emphasis in original) (citing *Carlisle v. United States*, 517 U.S. 416, 426 (1996))). Section 2255 proceedings are treated as part of the original criminal action. *See* Rules Governing Section 2255 Proceedings, Rule 1 advisory committee's note ("[A] motion under § 2255 is a further step in the movant's *criminal* case and *not* a separate civil action." (emphases added)); *United States v. Fiorelli*, 337 F.3d 282, 285-86 (3d Cir. 2003) (recognizing that the Rules "altered th[e] tradition" of treating § 2255 proceedings as separate civil suits).

Therefore, I must answer a series of questions. First, is Brown's Rule 60 motion actually a successive § 2255 motion in disguise? Second, does this court have the power to grant the relief that Brown seeks? And third, if I do have such power, should I exercise it—that is, are Brown's Rule 60(d) claims substantively meritorious? Because the answer to the first question is yes, I need not reach the latter two.

**B.      Application**

As stated above, I construe Brown's motion as asserting four grounds for relief: (1) trial

counsel was ineffective; (2) the government violated *Brady* by suppressing the full RDT at trial; (3) the government committed fraud on the court by withholding the full RDT for a portion of the § 2255 proceedings; (4) section 2255 counsel did not provide adequate representation.

Insofar as Brown contends that his trial was rendered unfair because trial counsel was ineffective and because the government violated *Brady*, these contentions are "a re-working of the same claims that Brown has pressed before." (Gov't Resp. at 15.) Because these contentions attack the "underlying conviction," *Pridgen*, 380 F.3d at 727, they constitute a successive § 2255 motion masquerading as a motion under Rule 60(d). Brown has not received authorization to file a second or successive § 2255 motion, so these portions of his motion must be dismissed for lack of jurisdiction.

But Brown's Rule 60(d) motion asserts two other arguments. First, he contends the government committed fraud on the court by withholding the full RDT until after his § 2255 motion was filed and after the statute of limitations expired. Second, he brings a claim of (what I will call) ineffectiveness of § 2255 counsel. Unfortunately, the government's response fails to meaningfully engage with the possibility that these may be proper grounds for Rule 60 relief. Whatever the merits of Brown's claims, I have to first answer the question of whether I have jurisdiction. I conclude that I do not.

1. **Fraud on the court**

*Gonzalez* expressly identifies "[f]raud on the federal habeas court [as] one example of" a proper basis for Rule 60 relief. 545 U.S. at 532 n.5 (citing *Rodriguez v. Mitchell*, 252 F.3d 191, 199 (2d Cir. 2001)). But *Gonzalez* also states that "a motion . . . seek[ing] leave to present 'newly discovered evidence,' Fed. Rule Civ. Proc. 60(b)(2), in support of a claim previously denied" is

15

the exact type of motion that should be construed as a second or successive habeas petition. *Id.* at 531 (citing *Rodwell v. Pepe*, 324 F.3d 66, 69 (1st Cir. 2003)). Brown's "fraud" claim strongly resembles a "new evidence" claim: he is arguing that, because of prosecutorial misconduct, the court was unable to fully utilize the contents of the full RDT in making its decision.

In *Rodwell*, the First Circuit approached a similar problem. It wrote:

> [T]he petitioner argues that the evidence upon which he now relies was improperly withheld during earlier proceedings (including the original habeas proceeding), thus constituting an "ongoing fraud" that challenges the integrity of the habeas judgment itself. This argument is clever, but flawed. . . .
> . . . The most that can be said for his present position is that the district court, if it had the benefit of a more elaborate presentation of the facts concerning the Faustian bargain between [the key witness] and the prosecutor, would have ruled differently in the habeas case and set aside the underlying conviction. So viewed, the motion before us is the practical equivalent of a second or successive habeas petition."

324 F.3d at 72. *Rodwell* was endorsed by *Gonzalez*. 545 U.S. at 531 ("We think those holdings are correct."). I find that *Rodwell* is directly on point and indicates that Brown's fraud claim is, in essence, an unauthorized successive § 2255 motion. This part of his motion will also be dismissed for lack of jurisdiction.[11]

### 2. Section 2255 counsel's ineffectiveness

In a footnote, the *Gonzalez* Court stated "that an attack based on the movant's own conduct, or his habeas counsel's omissions," should not be construed as a proper Rule 60 motion, because it "ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." 545 U.S. at 532 n.5 (internal citations

---

[11]In any event, the evidence is not "newly discovered." Brown's counsel received the full RDT on July 27, 2005, and Brown had it in his personal possession as of January 10, 2006. Thus, Brown had the full RDT while his first § 2255 motion was still pending before me.

16

omitted). This pronouncement by the Court settles the matter, as Brown's motion is "based on . . . his habeas counsel's omissions." Essentially, Brown seeks to have me redetermine the merits of his *Brady* and trial counsel ineffectiveness claims because (he believes) his § 2255 counsel did not adequately utilize the full RDT. Under *Gonzales*, this "attack" should be construed as a successive § 2255 motion.

I note that Brown's motion is clearly without merit. "Because a Rule 60 independent action is an equitable one, the proponent must show a meritorious claim or defense. Furthermore, relief under Rule 60(d) is reserved for the rare and exceptional case where a failure to act would result in a miscarriage of justice." *Sharpe*, 2010 WL 2572636, at *2 (E.D. Pa. 2010) (citing *Beggerly*, 524 U.S. at 42-46). Put another way, Brown must show that my denial of his § 2255 motion "ought not, in equity and good conscience, . . . be enforced." *In re Machne Israel, Inc.*, 48 F. App'x 859, 863 n.2 (3d Cir. 2002) (quoting *Nat'l Sur. Co. of N.Y. v. State Bank of Humboldt*, 120 F. 593, 599 (8th Cir. 1903)).

First, Brown does not explain why he did not raise the argument concerning counsel's failure to amend in his earlier Rule 60 motion, nor does he explain why he has waited until now, some six years and three months after my decision to deny his first § 2255 motion. Independent actions under Rule 60(d)(1) are subject to the equitable doctrine of laches. *Moore's Federal Practice* § 60.83. But the government does not invoke the defense, so I will not apply it.

Second, Brown cannot meet the stringent standard for relief under Rule 60. The Second Circuit, in entertaining a motion for reconsideration based on habeas counsel ineffectiveness, stated that "a Rule 60(b)(6) movant must show that his lawyer agreed to prosecute a habeas petitioner's case, abandoned it, and consequently deprived the petitioner of any opportunity to be

heard at all." *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004). Rule 60(b)(6) is Rule 60(b)'s catch-all provision; relief under this provision "is generally reserved for extraordinary circumstances where extreme and unexpected hardship will result absent relief." *In re Spansion, Inc.*, Nos. 11-3323, 11-3324, 2012 WL 6634899, at *2 (3d Cir. Dec. 21, 2012). I assume that the requirements for an independent action under Rule 60(d)(1) are at least as stringent.[12] *See Beggerly*, 524 U.S. at 46-47 ("[I]f [Rule 60] is to be interpreted as a coherent whole . . . an independent action should be available only to prevent a grave miscarriage of justice.").

Despite Brown's allegations that Newman "abandon[ed]" him, the docket shows that Newman filed a supplement to the § 2255 motion on November 18, 2005. (ECF No. 135.) He represented Brown at both the November 15, 2005 and January 10, 2006 evidentiary hearings. On April 21, 2006, he filed a reply to the government's response to the § 2255 supplement. (ECF No. 148.) Even if Newman did not rely on the argument concerning the full RDT to the extent that Brown desired, he certainly did not "deprive[] the petitioner of any opportunity to be heard at all."[13] Because allowing my orders to stand would not effect a "miscarriage of justice," Brown is

---

[12] Indeed, to prevail on an independent action in equity, there must be no adequate remedy at law. *See Moore's Federal Practice* § 60.82. I will assume Brown cannot bring a motion under Rule 60(b)(6) because such a motion "must be made within a reasonable time." Fed. R. Civ. P. 60(c). As noted above, Brown has stalled for over six years. But a relaxing of timeliness requirements in the equity context should entail a concomitant tightening of the grounds for relief, so as to protect our judicial system's interest in the finality of decisions. *Cf. Beggerly*, 524 U.S. at 46 (fashioning standards for fraud-based independent actions in light of the fact that Rule 60(b)(3) exists to correct fraud and has a one-year time limit); *Moore's Federal Practice* § 60.81 (noting "the fundamental principal that the older a judgment grows, the greater finality it should be accorded and the greater the burden on the party seeking to set it aside").

[13] Furthermore, any attempt to add a claim based on the full RDT may have been untimely under 28 U.S.C. § 2255(f). Brown argues that the claim would be timely because "Newman could have related the claim back to the original action of August 31, 2004." (Rule 60(d) Mot. at 3.) I decline to address the timeliness issue because it is unnecessary to the outcome here.

not entitled to relief.

### 3. Certificate of Appealability

"At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue." Third Circuit Local App. R. 22.2. "[W]hen, as here, a District Court has denied a § 2255 petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Walker v. Frank*, 56 F. App'x 577, 579 (3d Cir. 2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)). I have construed Brown's Rule 60 motion as a successive § 2255 motion, and I do not have jurisdiction over such a motion without prior Third Circuit approval. 28 U.S.C. § 2255(h). Jurists of reason would not debate this procedural ruling, nor would they debate that Brown's motion states a valid claim of the denial of a constitutional right. Therefore, a COA will not issue.

## III. Conclusion

For the reasons set forth above, I will dismiss Brown's motion because it is actually an unauthorized second or successive § 2255 motion. Because Brown has already applied for, and been denied, permission to file a successive § 2255 motion based on the full RDT, I will dismiss the instant motion with prejudice. No COA will issue. An appropriate order follows.